STATE OF NORTH CAROLINA v. QUINZESTON WEST, ALIAS QUINCY WEST AND RAYMOND I. SAVAGE

No. 7212SC779

(Filed 20 December 1972)

1. **Criminal Law § 66— admission of in-court identification**

    The trial court did not err in the admission of in-court identification testimony where the court determined upon supporting *voir dire* testimony that the witnesses' in-court identifications were based on their observations of defendants at the scene of the crime and were not tainted by any pretrial photographic identifications.

2. **Criminal Law § 88— recall of defendant for further cross-examination — discretion of court**

    The trial court did not abuse its discretion in permitting the State to recall one defendant for further cross-examination after the defendants had presented their evidence.

ON *certiorari* to review judgment of *Clark, Judge,* entered 16 June 1972 Superior Court, CUMBERLAND County.

Defendants were tried for and convicted of armed robbery, breaking into an automobile, and larceny. They gave notice of appeal. Upon a determination of indigency counsel was appointed to perfect their appeal. Record on appeal was not filed within the time prescribed by the rules of this Court, and defendants filed a petition for a writ of certiorari, which was granted.

*Attorney General Morgan, by Assistant Attorney General Salley, for the State.*

*Sol G. Cherry, Public Defender, Twelfth Judicial District, for defendant appellants.*

MORRIS, Judge.

Evidence for the State tends to show that Joseph Nelson (Joseph) and Gary Remiszewski (Gary), both residents of New Jersey, came to Fayetteville, N. C., driving a 1970 Volkswagen van owned by Joseph. They picked up a girl who was hitchhiking on the street coming into Fayetteville. Her name was Betty Johnson Wellard (Betty) and she told Joseph and Gary that she had a house where they could "wash up" and change clothes. They proceeded to Hay Street to see someone she knew. They stopped in front of a club and Betty talked to

her friend, who was Raymond Savage, defendant in this case. After a few minutes Joseph and Gary got out of the van and went into the club for a "quick beer." When they returned Betty was still talking to Savage and defendant West began pushing her and slapping her and calling her a "white pig." They got in the van and were introduced to Savage, who asked if they wanted any dope. West came over to the van and was introduced and informed Joseph and Gary that he had some "good New York dimes," a dime bag meaning that, although referring to no particular amount, a bag of heroin is $10 per bag. Savage and West walked away. Joseph, Gary, Betty and another couple went to a house located at 1312 Summit Avenue. Joseph locked the van, and he and Gary went upstairs to "wash up" and change clothes. When they came back downstairs, several people were in the living room, including Betty. In a few minutes Savage and West came in from the kitchen. Both had pistols. Savage made Joseph roll over on his stomach and tied his hands behind his back. The lighting was clear and he recognized Savage. West was with Gary and said he would like to shoot Gary in the eye and asked Savage to let him go ahead and shoot. Savage hit Joseph one time with his pistol. Savage took two rings, $260, and his identification from Joseph. One of the bills, a $50 bill was marked with the letters "DR" circled on the right hand side of the picture. A small amount of marijuana was taken from Joseph's shaving mug. West took $80 and a Seiko watch from Gary. After tying up Joseph and Gary, Savage went out to the van. He was there about 10 minutes when West yelled to him to hurry up and get the suitcase. Savage returned to the house carrying a box of tapes. Both left the house. Betty and another girl untied Joseph and Gary who ran outside. A person there told them he had seen "most of it." The police were called and were told what had happened. Inspection of the van revealed that one window had been broken and others pried open; the curtains were torn down, the glove compartment torn out, and the rug pushed out. Joseph's suede jacket was missing. Joseph and Gary left the area but, as result of information obtained on Hay Street, returned and parked across the street from the house where they had been robbed. They talked with the two men who lived across the street and then spent the night in the van. The next morning, one of the men across the street awakened them and told them one of the men who robbed them had gone in the house and the taxi cab which had brought him was waiting. Joseph grabbed a pistol and went to the cab. As he was getting

State v. West

the cab driver's card, he saw Savage and another come out of the house. Savage was wearing Joseph's jacket. He made them walk across the street where he searched them. He found in Savage's pocket the marked $50 bill. The police were notified and came and all of them were taken to the police station. The men who lived across the street saw the robbing of the van and saw the two men running down the street, one carrying a suitcase and the other carrying a tape box and pistol. They were picked up by a man driving a green Charger, which the two men had seen many times at 1312 Summit Avenue. One of them tried to follow the car but was not able to catch it. They did not take action sooner because "this activity looked natural for 1312 Summit Avenue."

[1] Defendant complains that the court committed error in its findings of fact, conclusions of law, and ruling at the close of the voir dire examination and in failing to suppress the identification testimony. The court made full findings of fact which were supported by competent evidence and concluded that the in-court identification was based on their observance of defendants on Hay Street and at 1312 Summit Avenue rather than on photographic identifications and that it was not tainted by the photographic identification, if any. It is well established in this jurisdiction that findings of fact made by the trial judge and conclusions drawn therefrom on the voir dire examination are binding on the appellate courts if supported by competent evidence. *State v. Accor* and *State v. Moore,* 281 N.C. 287, 188 S.E. 2d 332 (1972). There was no error in the admission of identification testimony.

There was plenary evidence to withstand defendants' motions for nonsuit, and the court did not commit error in denying the motions.

[2] After the defendants presented their evidence, the court allowed the solicitor to recall Savage for further cross-examination. Defendants objected, and their exception to the court's overruling their objection is the basis for their only other assignment of error. Neither defendant has shown any prejudice resulting from this procedure. The evidence elicited concerned matters to which Savage had testified on direct examination. No objection was made by either defendant at any time during this additional cross-examination. Defendants have shown no abuse of discretion nor do we perceive any.

Defendants had a fair trial, free from prejudicial error. They were represented both at trial and on appeal by able counsel.

No error.

Chief Judge MALLARD and Judge HEDRICK concur.